# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | | |
|---|---|---|
| In re | * | |
| | * | |
| WILLIAM A. PULLUM, and | * | Case No. 14-30215-JCO |
| MARTHA S. PULLUM, | * | Chapter 11 |
| | * | |
| Debtors. | * | |
| _____/ | * | _____/ |
| | * | |
| WILLIAM AND MARTHA PULLUM, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | Adversary Proceeding |
| v. | * | No. 16-03008 |
| | * | |
| SE PROPERTY HOLDINGS, LLC, | * | |
| | * | |
| Defendant. | * | |

**RESPONSE AND MEMORANDUM OF CREDITOR/CLAIMANT/DEFENDANT
SE PROPERTY HOLDINGS, LLC IN SUPPORT OF
DEBTORS' MOTION FOR APPROVAL OF MEDIATION SETTLEMENT AND
IN OPPOSITION TO OBJECTION TO
DEBTORS' MOTION FOR APPROVAL OF MEDIATION SETTLEMENT FILED BY
<u>CREDITORS TRUSTMARK NATIONAL BANK AND BEACH COMMUNITY BANK</u>**

Comes now SE Property Holdings, LLC ("SEPH"), a creditor and claimant in the above-styled bankruptcy case and the defendant in the above-styled adversary proceeding and files its *Response in support of* "Motion for Approval of Mediation Settlement" (doc. 339) (**"Settlement Motion"**) filed by Debtors in Possession/Plaintiffs William A. Pullum and Martha S. Pullum (**"Debtors"**) *and in opposition to* the "Objection to Motion for Approval of Mediation Settlement" filed by creditors and claimants Trustmark National Bank ("Trustmark") and Beach Community Bank ("BCB") (collectively, **"the Banks"**) (doc. 341) (**"Objection"**). Although, for the reasons set forth below, SEPH disagrees with Debtors' position that SEPH's filing of the

1

judgment lien certificates was insufficient to create and perfect judgment liens on Debtors' certified securities and other business interests (Settlement Motion, p. 5, ¶ 14;   Adv. Proc. Doc. 1, Counts II – IV), SEPH is in full agreement with Debtors that the mediated settlement of SEPH's claim (number 42, as amended), its lien claims as to the certified securities and other business interests, and the adversary proceeding is in the best interest of the creditors and the Bankruptcy Estate.   Consequently, SEPH supports Debtors' Settlement Motion requesting the Court's approval of the proposed Mediation Settlement.   The Objection to Debtors' Settlement Motion filed by the Banks is wholly without merit for the reasons set forth below.

## RELEVANT UNDISPUTED FACTS

1.   On July 3, 2013, SEPH obtained a Final Judgment in the amount of $917,018.92 against William A. Pullum in the civil action filed in the Circuit Court for Santa Rosa County, Florida, styled "*SE Property Holdings, LLC. v. Bill Pullum Realty, et al.*", No. 2012-CA-001079 (**"Bill Pullum Realty Judgment"**) (**Exhibit A**).

2.   Debtors and the other parties to the Bill Pullum Realty Judgment specifically approved the Judgment prior to its entry by the state court.   (**Exhibit B** – Cover letter dated June 21, 2013, to state court judge noting review and approval of proposed final judgment by counsel for defendants;   **Exhibit C** – Emails between counsel for SEPH and counsel for state court defendants (including Debtors) in which defense counsel approved proposed final judgment).   In addition to approving the Judgment, none of the state court defendants challenged the Bill Pullum Realty Judgment by means of a post-judgment motion, a request for rehearing, or an appeal. (**Exhibit D** – Copy of state court docket for the Bill Pullum Realty case).[1]

---

[1]   *See* Fed.R.Evid. 201 and *Boyd v. Georgia*, 512 F. App'x 915, 917 (11th Cir. 2013) (relying on Fed.R.Evid. 201 and holding that a federal court can take judicial notice of a state court docket).

3.  Also on July 3, 2013, SEPH obtained a Final Judgment in the amount of $518,731.87 against William A. Pullum and Martha S. Pullum, *et al*, in the civil action filed in the Circuit Court of Santa Rosa County, Florida, styled "*SE Property Holdings, LLC v. Crescent Shores Properties, Inc., et al.*", No. 2012 CA 001083 (**"Crescent Shores Judgment"**) (**Exhibit E**).

4.  Debtors and the other parties to the Crescent Shores Judgment specifically approved the Judgment prior to its entry by the state court.  (**Exhibit F** – Cover letter dated June 21, 2013, to state court judge noting review and approval of proposed final judgment by counsel for defendants;   **Exhibit C** – Emails between counsel for SEPH and counsel for state court defendants (including Debtors) in which defense counsel approved proposed final judgment).  In addition to approving the Judgment, none of the state court defendants challenged the Crescent Shores Judgment by means of a post-judgment motion, a request for rehearing, or an appeal. (**Exhibit G** – Copy of state court docket for the Crescent Shores case).

5.  The Bill Pullum Realty Judgment contained, in a single document, (a) entry of a judgment for foreclosure (and a specific date for the foreclosure sale) (Exh. A, pp. 1-4), with the state court retaining jurisdiction to enter a deficiency judgment, *inter alia;* and (b) entry of a judgment for monetary damages for the amount owed under the promissory note, as well as interest, attorney's fees, court costs, and other costs, **for which the court expressly stated *"for all of which let execution issue."*** (Exh. A, p. 5, ¶ 14) (bold and italics added).  The Crescent Shores Judgment is similarly structured and worded. (Exh. E, pp. 1-4;  Exh. E, p. 5, ¶ 14).

6.  On July 9, 2013, SEPH filed a judgment lien certificate for the Bill Pullum Realty Judgment with the Florida Secretary of State pursuant to Fla. Stat. § 55.202 *et seq.* (**Exhibit H**).

7.  On July 12, 2013, SEPH filed a judgment lien certificate for the Crescent Shores Judgment with the Florida Secretary of State pursuant to Fla. Stat. § 55.202 *et seq.* (**Exhibit I).**

8.  On August 12, 2013, the state court clerk foreclosed/sold the real property encumbered by mortgage under the Crescent Shores Judgment.  SEPH was the winning bidder for a sales price of $2,000.00.

9.  On March 5, 2014, Debtors filed their Chapter 11 bankruptcy petition.

10. On May 30, 2014, the state court clerk foreclosed/sold the real property encumbered by mortgage under the Bill Pullum Realty Judgment.  SEPH was the winning bidder for a sales price of $300,200.00.

11. No deficiency judgment has been entered by the state court following either foreclosure sale.

12. SEPH asserts that, as a result of the filing of the Bill Pullum Realty Judgment and the Crescent Shores Judgment with the Florida Secretary of State, it has valid, perfected judgment liens covering Debtors' interests in the various entities listed in their Settlement Motion (doc. 339, ¶¶ 8-11).

13. On July 23, 2014, SEPH filed a claim in this Bankruptcy Case, (number 42), which, as amended on February 16, 2016, totals $825,210.48, after crediting SEPH's estimate of the value of the collateral foreclosed by SEPH along with other credits, but without yet including all post-petition attorney's fees, post-petition interest, and costs.

14. On February 29, 2016, Debtors filed the adversary proceeding against SEPH, contending, *inter alia*, that the filing of the judgment lien certificates was insufficient to create and perfect a judgment lien on certificated securities and other business interests.

15. Following mediation in August 2017, Debtors and SEPH entered into a settlement agreement which would resolve SEPH's claim and put an end to the litigation over SEPH's

judgment liens. (**"Settlement Agreement"**).   A copy of the proposed Settlement Agreement is attached to Debtors' Settlement Motion.

## CONCLUSIONS OF LAW

### A.  The Proposed Settlement Motion Satisfies the Criteria for a Rule 9019 Compromise

#### 1.  Debtors' Settlement Motion is Based On Their Informed Judgment

When making the decision to file a motion to settle or compromise pursuant to Bankruptcy Rule 9019, a "trustee is required to reach an informed judgment, after diligent investigation, as to whether it would be prudent to eliminate the inherent risks, delays and expense of prolonged litigation in an uncertain cause." *In re Diplomat Const., Inc.*, 454 B.R. 917, 920 (Bankr. N.D. Ga. 2011) (quoting *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.),* 212 F.3d 632, 635 (1st Cir. 2000)) (in turn quoting *Kowal v. Malkemus (In re Thompson),* 965 F.2d 1136, 1145 (1st Cir. 1992)).[2]   A reading of the Settlement Motion, as well as Debtors' Complaint in the adversary proceeding, shows that Debtors are aware of the factual and legal issues at play and the related risks, as well as the governing law, and that, consequently, the Settlement Motion is based on their informed judgment.

---

[2]  Bankruptcy Rule 9019(a) provides in part that "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.".   Debtors in this Chapter 11 case are debtors in possession, and they have authority to file a Rule 9019 settlement motion by virtue of Bankruptcy Rule 9001(11), which provides that "'Trustee' includes a debtor in possession in a chapter 11 case".   Debtors' authority also comes from 11 U.S.C. § 1107(a) which provides in relevant part, "Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties, . . . of a trustee serving in a case under this chapter."   Consequently, the Rule 9019 cases discussed and quoted herein which explain the duties and discretion of trustees are equally controlling in this debtor in possession case.   *See In re Smart World Techs., LLC,* 423 F.3d 166, 175 (2d Cir. 2005) ("Rule 9019, which by its terms permits only the debtor-in-possession to move for settlement, is in complete harmony with the provisions of the Bankruptcy Code delineating the chapter 11 debtor's role.   It is the debtor-in-possession who controls the estate's property, including its legal claims, and it is the debtor-in-possession who has the legal obligation to pursue claims or to settle them, based upon the best interests of the estate.").

### 2. The Settlement Agreement Does Not "Fall Below the Lowest Point in the Range of Reasonableness"

"As a general matter, the law favors compromise over litigation.  Consistent with this policy, bankruptcy courts have broad discretion to approve compromises under Rule 9019." *In re Simmons*, 520 B.R. 136, 141 (Bankr. M.D. Fla. 2014) (citing *In re Bicoastal Corp.,* 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993), in turn citing *In re Charter Co.,* 72 B.R. 70, 72 (Bankr. M.D. Fla. 1987)) (other citations omitted).

For its part, the Bankruptcy Court "is neither to 'rubber stamp' the trustee's proposals nor to substitute its judgment for the trustee's, but rather to 'canvass the issues' and determine whether the settlement falls 'below the lowest point in the range of reasonableness.'" *In re Matthews*, No. 10-96519-MGD, 2014 WL 1277874, at *2 (Bankr. N.D. Ga. Mar. 11, 2014) (quoting *In re Vazquez*, 325 Bankr. 30, 36 (Bankr. S.D. Fla. 2005)) (in turn quoting *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983)).

### 3. The Four Factors of a Proposed Rule 9019 Settlement Weigh in Favor of Approval

> Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  In this circuit, **a bankruptcy court evaluating a proposed settlement must consider:**
> **(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection;  (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.**
> *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir.1990) (quoting *Martin v. Kane* (*In re A & C Prop.*), 784 F.2d 1377, 1381 (9th Cir.1986)).  Courts consider these factors to determine "the fairness, reasonableness and adequacy of a proposed settlement agreement." *In re A & C Prop.,* 784 F.2d at 1381.

*In re Chira,* 567 F.3d 1307, 1312-13 (11th Cir. 2009) (bold added) (footnote omitted).   The

bankruptcy court does not have to consider all of the four *Justice Oaks* factors. *Id.* at 1313.

### a.  Probability of Success on The Merits

#### (i.)    Summary of the Judgments

In the Bill Pullum Realty litigation and in the Crescent Shores litigation, SEPH asserted

two distinct causes of action – (1) an equitable cause of action for breach of a mortgage for

which the equitable remedy of foreclosure was sought and for which a deficiency judgment was

requested in the event the foreclosure failed to yield sufficient funds to satisfy the amount owed,

and (2) a legal cause of action for breach of a promissory note for which monetary damages were

sought.  The state court entered summary judgment in favor of SEPH in both lawsuits as to both

of these causes of action. (Exhs. A and E).  Consequently, as noted above, the Bill Pullum Realty

Judgment contained, in a single document, (a) entry of a foreclosure judgment (with a specified

foreclosure sale date) (Exh. A, pp. 1-4), with the court retaining jurisdiction to enter a deficiency

judgment, *inter alia*; and (b) entry of a monetary judgment ***for which the court expressly stated***

***"for all of which let execution issue."*** (Exh. A, p. 5, ¶ 14) (bold and italics added).  As also

noted above, counsel for the state court defendants, including Debtors, specifically approved the

Bill Pullum Realty Judgment prior to its entry by the state court, and no party challenged the

Judgment by motion or appeal. (Exhs. B, C, and D).  All of foregoing is true as to the Crescent

Shores Judgment. (Exh. E, pp. 1-4;  Exh. E, p. 5, ¶ 14;  Exhs. C, F, and G).

#### (ii.)    Judgments for Monetary Damages *"for all of which let execution issue"* Are Final Under Florida Law

Inclusion of the phrase "for all of which let execution issue" with respect to the monetary

Judgments rendered those Judgments "final" under Florida law.  *See, e.g., Westgate Miami*

*Beach, LTD v. Newport Operating Corp.,* 55 So. 3d 567, 575 (Fla. 2010) (reaffirming the Court's

previous holding in *McGurn v. Scott*, 596 So. 2d 1042 (Fla. 1992) that "a final judgment that authorizes execution but reserves jurisdiction to award prejudgment interest will be considered final for purposes of appeal.") (footnote omitted).[3]  *See also Willis v. Red Reef, Inc.*, 921 So. 2d 681, 684–85 (Fla. 4th Dist. Ct. App. 2006) ("While case law does not require the traditional language 'for which let execution issue,' *see Friedman v. Friedman,* 825 So.2d 1010 (Fla. 4th DCA 2002), as a practical matter, including the same will eliminate any issue in that regard should Red Reef apply for a writ of execution from the clerk of court.");  *Lombardo v. Haige*, 971 So. 2d 1037, 1040 (Fla. 2nd Dist. Ct. App. 2008) ("[W]e cannot fathom how one can wait to appeal an order upon which execution can enter.").  On the strength of *Westgate*, *Red Reef*, *Lombardo*, and other Florida cases which conclude that the inclusion of the phrase *"for all of which let execution issue"* transforms a judgment into a final judgment, it is SEPH's position that the monetary Judgments (within the Bill Pullum Realty Judgment and the Crescent Shores Judgment) were final judgments under Florida law, and as such, the Judgments qualified for perfection under Fla. Stat. § 55.202.

### (iii.)    Florida Law Provides for Perfection of a Final Judgment

Florida Statute § 55.202 expressly permits a judgment creditor to perfect a judgment lien on all of the judgment debtor's leviable personal property in the state by filing a judgment lien certificate with Florida's Secretary of State:

> A judgment lien is acquired by filing a judgment lien certificate in accordance with s. 55.203 with the Department of State after the judgment has become final and if the time to move for rehearing has lapsed, no motion for rehearing is pending, and no stay of the judgment or is enforcement is then in effect.  A court may authorize, for cause shown, the filing of a judgment lien

---

[3]  The *Westgate Miami Beach* Court receded from other aspects of the *McGurn* decision, but specifically reaffirmed the *McGurn* Court's holding regarding the finality of judgments for which execution is permitted.

> certificate before a judgment has become final when the court has
> authorized the issuance of a writ of execution in the same
> matter. . . .

Fla. Stat. § 55.202(2)(a).  *See also* Fla. Stat. § 55.202(1)(a) ("A judgment lien securing the unpaid amount of any money judgment may be acquired by the holder of a judgment: (a) [e]nforceable in this state under its law or the laws of the United States") and Fla. Stat. § 55.202(2) ("A judgment lien may be acquired on a judgment debtor's interest in all personal property in this state subject to execution under s. 55.061, other than fixtures, money, negotiable instruments, and mortgages.").  SEPH filed judgment lien certificates for the Judgments in accordance with Fla. Stat. § 55.202, thereby perfecting judgment liens on Debtors' certificated securities and other business interests. (Exhs. H and I).

### (iv.)    Perfection v. Execution

As the Florida Fourth District Court of Appeals has remarked, there is "a vast difference" between perfection and execution.

> [A]ppellant argues at some length that the Shubows cannot prevail
> here because there is no evidence of any default regarding the
> payments due under the settlement agreement and that the right to
> execution under either the probate code or the settlement
> agreement is not available to the Shubows.  **The obvious response
> to those arguments is that the Shubows are not by these
> proceedings attempting to execute on anything;  they simply
> seek what the settlement agreement promised them,** *i.e.,* **a
> perfected security interest in the stock in question.** *There is, of
> course, a vast difference between these types of relief.*

*Finizio v. Shubow*, 557 So.2d 640, 641-42 (Fla. 4th DCA 1990) (bold and italics added).

Moreover, Fla. Stat. § 55.205(1) underscores the fact that perfection (and the resulting judgment lien) under Fla. Stat. § 55.202 is not the same as execution (and the resulting execution lien):  *"A judgment creditor who has not acquired a judgment lien as provided in s. 55.202* or whose lien has lapsed *may nevertheless proceed against the judgment debtor's property through*

*any appropriate judicial process.  Such judgment creditor proceeding by writ of execution acquires a lien as of the time of levy and only on the property levied upon."*  (italics added).

In another bankruptcy case in this Court, Judge Callaway addressed the question of whether a creditor's judgment lien which was recorded under Fla. Stat. § 55.202 in 2011 was perfected at the time of recording or whether it was perfected later when the sheriff actually seized possession of the debtor's stock certificates in 2015 pursuant to a writ of execution.  After a lengthy discussion of the Judgment Recordation Act (of which Fla. Stat. § 55.202 is a part), Judge Callaway concluded that the date of perfection was the date of recordation in 2011.

> **[T]he newer recordation lien of Florida Statute Section 55.202 is a separate, different lien which does not require seizure of the stock certificate for perfection.**  As discussed earlier, Florida Statute Sections 55.202(2) two [sic], 56.061, and 55.205(4) specifically make the recordation lien applicable to stock in corporations, including certificated securities.   And as also discussed earlier, **the judgment execution lien and the judgment recordation lien are separate, independent means of creating a judgment lien on personal property;  a judgment creditor can utilize one or the other or both.**  Seizure is one of the final steps in the execution and levy process.  A creditor who accomplishes seizure of a stock certificate has necessarily perfected a judgment execution lien on the stock certificate.   **However, the seizure requirement does not relate to the recordation lien, which does not require execution at all as provided by Section 55.205(1).**  To superimpose the seizure requirement on the recordation lien would render the recordation lien a nullity and eliminate its sphere of operation with regard to stock certificates because it would require judgment creditors to go through the execution and levy process, thus creating [an] execution lien, in order to create a judgment lien on stock certificates.

*Bancorpsouth Bank v. Shahid*, Adv. Proc. 15-03019-JC, pp. 19-20 (Bank. N.D. Fla. Aug. 3, 2016) (bold added) (**Exhibit J** -- copy of the transcript of Judge Callaway's oral ruling), *aff'd, Shahid v. Bancorpsouth Bank*, No. 3:16cv406-RV/CJK, doc. 11 (N.D. Fla. Sept. 29, 2017) (**Exhibit K** – copy of Judge Vinson's order).

As these various authorities make clear, SEPH's act of recording the judgment lien certificates constituted perfection of its monetary Judgments, not execution.  Thus, while the *"for all of which let execution issue"* language transformed the Judgments into final judgments (a prerequisite for perfection), the inclusion of that language does not mean that the act of perfecting constitutes (or equates with) execution; it does not.  As the *Finizio* Court observed, "there is, of course, a vast difference between these types of relief" (557 So. 2d 640, 641-42), and as Judge Callaway explained, a lien obtained under Fla. Stat. 55.202 is a recording (perfection) lien, not an execution lien. *Bancorpsouth Bank v. Shahid*, Adv. Proc. 15-03019-JC, pp. 19-20.  SEPH is not aware of any authority which prohibits the perfection of a judgment lien pursuant to Fla. Stat. § 55.202 under the circumstances presented in this case, and neither Debtors nor the Banks have cited any such authority.

### (v.)    Debtors' Challenges and the Banks' Objection

In the adversary proceeding, Debtors challenged SEPH's judgment liens, contending in their Complaint that the liens are not perfected.  The Banks also contend that SEPH's judgment liens are not perfected (Objection, pp. 4 and 5-6, ¶¶ 10 and 12), because, they claim, the Judgments were not final (notwithstanding the inclusion of *"for all of which let execution issue"* language) since the then-scheduled foreclosure sales had not been held and deficiency judgments (if needed) had not been entered. (Objection, pp. 6-10, ¶¶ 13-17, 19-20).

The Banks rely primarily on three Florida cases to support their argument that the monetary Judgments were not final and that SEPH cannot execute on those Judgments because the foreclosures had not yet been conducted and deficiency judgments (if deficiencies arose upon foreclosure) had not been entered at the time of perfection – *Hammond v. Kingsley Asset Management, LLC,* 144 So. 3d 673 (Fla. 2d DCA 2014);  *Farah v. Iberia Bank,* 47 So.3d 850,

11

851 (Fla. 3d DCA 2010);  and *Royal Palm Corporate Center Assn., Ltd. v. PNC Bank, NA,* 89 So. 3d 923 (Fla. 4th DCA 2012).  *Hammond*, *Farah*, and *Royal Palm* are all readily distinguishable and do not provide the legal basis for their Objection that the Banks suggest they do.

In *Hammond*, the state court entered a foreclosure judgment in favor of the creditor and, on the same day, entered a monetary judgment in favor of the creditor.  Both judgments were entered in the same case for the same amount.  The monetary judgment included the provision "[L]et execution issue".  A foreclosure sale was conducted, but, although the sale price was far below the amount the judgment debtor owed the creditor, the creditor did not request entry of a deficiency judgment.  The creditor did, however, garnish other monies which were about to be paid to the judgment debtor.  On appeal, the *Hammond* Court concluded that the creditor could not collect on the monetary judgment after having requested and obtained a foreclosure sale but having not requested a deficiency judgment. 144 So. 3d at 675.  The basis for the *Hammond* Court's decision was its concern that the creditor might obtain a double recovery since it was executing on the foreclosure judgment and the monetary judgment at the same time:  "To avoid the possibility of a double recovery, before [the creditor] can execute on the promissory note [the monetary judgment], the trial court must conduct a deficiency hearing to determine the amount of set-off from the foreclosure sale." *Id*. at 676.  Thus, *Hammond* only dealt with a creditor's *execution* of a judgment, not like here, *perfection* of monetary judgment.  The foundation for the *Hammond* Court's decision – concern about double recovery – is not present with perfection. For these reasons, *Hammond* provides no support for the Banks' Objection.

*Farah* is not applicable because it, too, does not involve perfection of a judgment (perfection is not even mentioned by the *Farah* Court), nor does it address the difference

between perfection and execution.  Although the *Farah* decision is "light on facts"[4] (the entire case is less than one page in length as printed in the West reporter), it appears that the judgment entered by the trial court included a foreclosure judgment and a monetary judgment "for which let execution issue".  **On appeal, the *Farah* Court struck the "for which let execution issue" language from the *Farah* monetary judgment** because the appellate court wanted to terminate the creditor bank's ongoing execution of that judgment on the debtor's personal property before a deficiency judgment was entered as to the mortgage.  Disturbed by the creditor bank's execution efforts on the debtor's personal property while the foreclosure sale was apparently pending, the *Farah* Court stated:

> [W]e disapprove any effort – including those already undertaken by the [creditor bank] in this case – to reach the personal assets of the mortgagor until, unless, and only to the extent that a deficiency judgment is rendered after an appropriate exercise of the trial court's discretion in accordance with applicable principles of law and equity.

*Farah*, 47 So.3d at 851.  The *Farah* Court's concern over the creditor bank's execution on personal property was heightened by the claim that the creditor bank had waived its right to a deficiency judgment, in which case the creditor bank would not be allowed to execute on any personal property.  *Id.*  Here, again, in their Objection, the Banks challenge whether SEPH's Judgments are perfected;  they do not contend that SEPH has wrongfully attempted a double recovery on those Judgments through execution.  As *Farah* does not speak to a creditor's right to perfect, *Farah* provides no support for the Banks' Objection.

Additionally and alternatively, it is also important to note that the *Farah* Court's solution to the creditor's execution on the monetary judgment before a deficiency judgment was entered

---

[4]  "[L]ight on facts" is how the Florida Fourth Court of Appeals in *Royal Palm* described the *Farah* opinion. *Royal Palm,* 89 So. 3d at 933.

following the foreclosure sale was to strike the language "for which let execution issue" from the *Farah* monetary judgment, thereby rendering it not final and barring execution.  As established above (Exhs. B, C, and F), **inclusion of that language in the Judgments (which transformed the Judgments into final judgments) was approved by counsel for Debtors and the other state court defendants.**  Nevertheless, even if this federal Court assumes, on the basis of *Farah*, that the trial court's inclusion in the SEPH Judgments of the provision *"for all of which let execution issue"* was improper, **the fact that the language was included by the state court in the Judgments still operates to make the monetary judgments final, as that language has not been stricken by a Florida state court.**  *See Del Castillo v. Ralor Pharmacy, Inc.*, 512 So. 2d 315, 319 (Fla. Dist. Ct. App. 1987) ("There is no question of the impropriety of the April 21, 1983 order which provided for the plaintiff's recovery of specified money damages and ordered execution, while at the same time retaining jurisdiction over the punitive damages issue.  *But, and here is finally the point, because such an order appears, however erroneously, to be, or have the attributes of a "true" final judgment, it is deemed to have taken on the characteristic of such a judgment."*) (italics added).

Moreover, by relying on *Farah* (in which the remedy provided by the state appellate court was to strike the very language which simultaneously made the monetary judgment final and execution permissible) and by contending that the Judgments "were not final for purposes of recording them under section 55.02" (Objection, p. 7, ¶ 15), the Banks are implicitly attacking the Judgments collaterally.  As an initial matter, the Banks do not have standing to collaterally attack the Judgments, as neither were parties to either Judgment and have not suffered in "injury in fact".  *Nat'l All. for Mentally Ill, St. Johns Inc. v. Bd. of Cty. Comm'rs of St. Johns Cty.*, 376 F.3d 1292, 1294–95 (11th Cir. 2004) ("To establish standing . . . , a party must 'demonstrate

that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision.'") (quoting *Bennett v. Spear,* 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (internal quotation marks and citations omitted); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (defining "injury in fact").[5]

Second, collateral attacks in federal court on state court judgments are not allowed under the Full Faith and Credit Clause of the United States Constitution (Art. IV, §1) or its enabling statute (28 U.S.C. § 1738)[6]. *Adar v. Smith*, 639 F.3d 146, 151 (5th Cir. 2011) ("[T]he [Full Faith and Credit] clause and its enabling statute created a rule of decision to govern the preclusive effect of final, binding adjudications from one state court or tribunal when litigation is pursued in another state or federal court."). *Accord, Hazen Research, Inc. v. Omega Minerals, Inc.*, 497 F.2d 151, 153 (5th Cir 1974) ("Under the compulsion of this statute [28 U.S.C. § 1738], federal courts are required to give full effect to the final judgments of state courts, subject only to narrowly circumscribed avenues of collateral attack.") (citing *Midessa Television Co. v. Motion Pictures for Television*, 290 F.2d 203 (5th Cir. 1961)); *In re Bus Stop, Inc.*, 3 B.R. 26, 27 (Bankr. S.D. Fla. 1980) ("The full faith and credit clause in the federal Constitution . . . requires only that States give full faith to the judicial proceedings of other States. However, the doctrine was

---

[5]  As noted above, none of the state court defendants (including Debtors and the entities they controlled) challenged either Judgment, by post-judgment motion or an appeal. (Exhs. D and G).
[6]  28 U.S.C. § 1738 provides in relevant part:

> . . . [A]uthenticated acts, records and judicial proceedings of all state and territorial courts [by proof or by admission], "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

*Hazen Research, Inc. v. Omega Minerals, Inc.*, 497 F.2d 151, 153 (5th Cir 1974). The Banks have admitted the authenticity of the Judgments, having attached copies of them to their Objection without questioning their authenticity. (Objection, Exhibits 1 and 2).

extended by the Congress [through 28 U.S.C. § 1738] to require federal courts 'to give full effect to the final judgments of state courts'.  This statute, by its terms, requires that the judgment be accorded the same effect it would receive in the courts of that State.").

As SEPH explained above, judgments issued by Florida courts which contain the provision "for which let all execution issue" are final judgments (*Westgate, et al.*).  Even if it was improper for the trial court to include such language, the provision still operates to make the judgment final (*Del Castillo*).  The only alternative to recognizing the Judgments as final is (according to one of Florida's courts of appeals) to strike the provision (*Farah*).  But this Court has no authority to modify any part of a state court judgment (except under very few circumstances not present here[7]).  Thus, the Judgments in this case – which were approved by (and not challenged by) any of the parties thereto -- are final judgments which would be recognized as such by Florida courts.  By virtue of the foregoing authorities, this federal Court must also recognize the Judgments as final judgments, and as such, they were properly perfected under Fla. Stat. § 55.202, creating judgment liens in favor of SEPH.

The third case relied upon by the Banks is *Royal Palm*, in which the creditor bank (PNC) loaned money to a corporate entity and, in exchange, the corporate entity gave PNC a security interest in a piece of real property (a mortgage) and executed a promissory note.  Other parties executed guaranties in favor of PNC for the loans.  PNC entered into similar loan transactions with related entities involving similar promissory notes, guaranties, and mortgages.  After default on the loans, PNC filed separate suits on the difference loan transactions.  As SEPH did here,

---

[7]  As the party asserting a collateral attack on the state court Judgments, the Banks have the burden of establishing that an exception exists to the prohibition on collateral attacks.  The Banks have not, and cannot, satisfy their burden of proof on this issue. *Hazen Research, Inc. v. Omega Minerals, Inc.*, 497 F.2d 151, 154 (5th Cir. 1974) ("Of course, the 'burden of undermining (the [state court] judgment) rests heavily upon the assailant.'") (quoting *Williams v. North Carolina*, 325 U.S. 226, 233-234, 65 S.Ct. 1092, 1097, 89 L.Ed. 1577 (1945)).

PNC asserted an equitable cause of action based on the mortgage for which it sought a foreclosure judgment (and a deficiency judgment, if necessary), and a legal cause of action based on the promissory note and guaranties for which it sought a monetary judgment. The trial court ruled in favor of PNC on the merits and entered a monetary judgment in each case "for which let execution issue". Although the court determined that PNC was owed money under the mortgage and entered a foreclosure judgment, the court did not order a foreclosure sale of the mortgaged property, specifically opting instead to allow PNC to execute on the monetary judgment first and stating that a foreclosure sale would be ordered if and when PNC certified that the monetary judgment had not been satisfied. On appeal, the Florida Fourth Court of Appeals approved the lower court's judgment and the procedure ordered therein. In so ruling, the *Royal Palm* Court spoke at length about how Florida follows the common law rule which permits a creditor to collect on the money owed on a note by "pursu[ing] its legal and equitable remedies simultaneously, until the debt is satisfied." *Royal Palm*, 89 So.3d at 929. Although the debtors in *Royal Palm* "[r]el[ied] heavily" on *Farah* to contend that PNC was limited to the deficiency process if it sought to obtain judgments beyond foreclosure" (*id.* at 933), the *Royal Palm* Court rejected the debtors' reliance on *Farah*, focusing on the fact that the *Farah* judgment permitted a double recovery through simultaneous execution of the monetary judgment and initiation of the foreclosure process, whereas the judgment in *Royal Palm* established a two-step process which prevented a double recovery. *Royal Palm*, 89 So. 3d at 933. As with *Farah*, *Royal Palm* does not speak to a creditor's right to perfect, and it provides no support for the Banks' Objection.

Notwithstanding the Banks' belief that "Debtors should prevail in the [a]dversary [p]roceeding," (Objection, p. 10, ¶ 20), none of the cases relied upon by the Banks provide any legal support for their Objection or for Debtors' adversary proceeding. The very fact that

Debtors' likelihood of success on the merits is questionable weighs in favor of Debtors' decision to settle SEPH's claim on terms that are favorable to the Bankruptcy Estate.

### b.  The Difficulties, if any, to be Encountered in the Matter of Collection

As in *In re Chira*, "[t]he second factor is irrelevant in the instant case because collection difficulties for Debtors are not an issue."  *In re Chira*, 567 F.3d at 1313.

### c.  The Complexity of the Litigation Involved, and the Expense, Inconvenience and Delay Unnecessarily Attending It

Debtors addressed this factor in the Settlement Motion and cogently explained how this factor weighs heavily in favor of approval of the Settlement Agreement. (Settlement Motion, pp. 6-7, ¶ 21).   SEPH concurs with Debtors' explanation and reiterates that approval of the Settlement Agreement will pretermit protracted and costly litigation over SEPH's significant claim, with such litigation yielding only uncertain and possibility minimal benefit to the Bankruptcy Estate.  Although SEPH is confident that its two Judgments were properly perfected and that it holds valid, perfected judgment liens on Debtors' certificated securities and other business interests, SEPH is nonetheless aware that the path of establishing the validity of its liens is not without risk.  Moreover, forging ahead on that path of litigation (including challenges to SEPH's claim and trial of the adversary proceeding) will also be expensive in terms of additional attorneys' fees, costs, and interest, with resolution being indefinitely delayed to some future date. This factor weighs strongly in favor of approving the Settlement Agreement.

### d.  Paramount Interest of the Creditors and a Proper Deference to Their Reasonable Views in the Premises

After weighing the costs and risks of pressing forward with its claim versus settling its claim and the adversary proceeding on the terms set out in the Settlement Agreement, SEPH, itself a creditor, favors the settlement.  The only creditors to object to the Settlement Motion are

the Banks, but for the reasons set forth above, their Objection lacks a factual or legal basis and is not entitled to any deference. The proposed Settlement Agreement will benefit the Bankruptcy Estate and, therefore, the priority and unsecured creditors, through the significant reduction of SEPH's claim, as well as in the reduction of the costs and risks further litigation entails. Debtors' business judgment, having been properly exercised, should be credited and the Settlement Motion granted.

## CONCLUSION

"Trustees [and Debtors in possession] are in a unique position of having a global vantage point in a bankruptcy case. They act for the benefit of the entire estate attempting to maximize the value of the estate and increase distributions to creditors." *In re Smith Int'l Enterprises, Inc.*, 325 B.R. 450, 456 (Bankr. M.D. Fla. 2005). When properly exercised, the "trustee's business judgment is given great deference in the approval process of a settlement", especially where all the "relevant facts and information" demonstrate that "the settlement is fair and reasonable under the circumstances." *In re Vazquez,* 325 B.R. 30, 36 (Bankr. S.D. Fla. 2005). Here, as set out in the Settlement Motion, Debtors have exercised their business judgment and concluded, after weighing the applicable criteria, that the Settlement Agreement "is in the best interest of the Bankruptcy Estate for several reasons". (Settlement Motion, pp. 6-7, ¶ 21). An independent review of the facts and circumstances of this case confirms Debtors' recommendation for approval of the Settlement Motion. SEPH's current claim consists of $825,210.48 (after crediting SEPH's estimate of the value of the collateral foreclosed by SEPH along with other credits) **plus** (but not yet included in the $825,210.48) all of SEPH's substantial post-petition attorney's fees, post-petition interest, and costs. The proposed Settlement Agreement reduces **all** of SEPH's claim down to a fixed cap total of $650,000.00. Thus, without question, the proposed

Settlement Agreement – which will result in significantly more money being available to the Bankruptcy Estate for distribution to the remaining creditors – definitively does not "fall below the lowest point in the range of reasonableness." *In re Matthews*, No. 10-96519-MGD, 2014 WL 1277874, at *2 (Bankr. N.D. Ga. Mar. 11, 2014) (citations omitted).  The Objection interposed by the Banks contains no factual or legal basis for countermanding Debtors' judgment and is due to be overruled.  SEPH fully supports Debtors' Settlement Motion and requests that the Court grant the relief requested therein, including approval of the Settlement Agreement.

Done this 7th day of May, 2018.

Respectfully submitted,

/s/ Richard M. Gaal
RICHARD M. GAAL (GAALR3999)
Attorney for SE Property Holdings, LLC

**OF COUNSEL:**

MCDOWELL KNIGHT
ROEDDER & SLEDGE, LLC
Post Office Box 350
Mobile, Alabama 36601
Telephone:  (251) 432-5300
Fax:  (251) 432-5303

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic transmission via Notice of Electronic Filing (NEF) to all parties listed below and/or by U.S. Mail on May 7, 2018.

John E. Venn - johnevennjrpa@aol.com

Philip Alan Bates - pbates@philipbates.net

Judson C. Brandt - jbrandt@clarkpartington.com

Charles F. Edwards - charles.edwards@usdoj.gov

William Lee Ketchersid - bketchersid@flaattorney.com

Lewis Martin Killian, Jr. - lkillian@bergersingerman.com

Todd M. LaDouceur - tladouceur@gjtbs.com

Andrea C. Lyons - acl@esclaw.com

James R. McCachren, III - jmccachren@sgrlaw.com

David Lewis Powell - dpowell@flaattorney.com

Robert James Powell - rpowell@clarkpartington.com

Steven Gerald Powrozek - spowrozek@logs.com

Robert P. Reynolds - rreynolds@rrllaw.com

Gavin Stewart - bk@stewartlegalgroup.com

United States Trustee - USTPRegion21.TL.ECF@usdoj.gov

/s/ Richard M. Gaal