**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

IN RE:

WILLIAM A. PULLUM &
MARTHA S. PULLUM                                       CASE NO.: 14-30215-JCO
                                                       CHAPTER:  11
   Debtors.

WILLIAM & MARTHA PULLUM,

   Plaintiffs,

v.                                                     ADV. PROC. NO. 16-3008-JCO

SE PROPERTY HOLDINGS, LLC,

   Defendant.
_____/

## MEMORANDUM OPINION DENYING *MOTION FOR APPROVAL OF MEDIATION SETTLEMENT* (DOC. 339)

THIS MATTER came before the Court on the Debtors' *Motion for Approval of Mediation Settlement* ("Motion," Doc. 339), filed on February 13, 2018.[1] The Motion, Objecting Creditors' Responses, and SEPH's Responses came on for hearing initially on May 18, 2018. The final hearing was held on December 14, 2018, at which time the Court took the matter under advisement

---

[1] On March 6, 2018, Trustmark National Bank and Beach Community Bank (collectively, "Objecting Creditors") filed their *Objection to Motion for Approval of Mediation Settlement* ("Objection" Doc. 341). On May 8, 2018, SE Property Holdings, LLC ("SEPH") filed its Amended Response and Memorandum in Support of Debtors' Motion for Approval of Mediation Settlement ("Response to Objection" Doc. 357). On May 11, 2018, the Objecting Creditors filed their Reply in Opposition to SEPH's Response to Objection ("Reply" Doc. 359). On May 17, 2018, SEPH filed its Sur-Reply and Memorandum in Opposition to Objecting Creditors' Reply ("Sur-Reply" Doc. 361). On August 30, 2018, the Objecting Creditors filed their Supplemental Reply to SEPH's Sur-Reply. ("Supplemental Reply" Doc. 384). (The Objection, Reply, and Supplemental Reply will be collectively referred to as "Objecting Creditors' Responses;" while the Response to Objection and Sur-Reply will be collectively referred to as "SEPH's Responses.").

("Final Hearing"). After a review of the pleadings, evidence, and relevant case law; and having heard argument of counsel, the Motion is due to be denied for the reasons set forth below.

## BACKGROUND

On March 5, 2014, Debtors filed a petition for Chapter 11 relief ("Petition Date"). Prior to the Petition Date, on July 3, 2013, SE Property Holdings, LLC ("SEPH") obtained two final judgments: the first in the amount of $917,018.92 against William A. Pullum ("Judgment One") and the second in the amount of $518,731.87 against William A. Pullum and Martha S. Pullum ("Judgment Two") (collectively, the "Judgments").[2] Five days after obtaining the Judgments, on July 8, 2013, SEPH recorded a certified copy of the Judgments in the public records of Santa Rosa County, Florida. On July 9, 2013, SEPH filed a judgment lien certificate for Judgment One with the Secretary of State of Florida. On July 12, 2013, SEPH filed a judgment lien certificate for Judgment Two with the Secretary of State of Florida. On May 30, 2014, the Judgment One subject property was sold to SEPH for $300,200.00. On August 12, 2013, the Judgment Two subject property was sold to SEPH for $2,000.00.

SEPH filed a secured claim in Debtors' bankruptcy case in the amount of $825,210.55 plus post-petition fees, interest, and costs.[3] SEPH also claims a valid and perfected security interest on Debtors' interests in all entities in which Debtors own stock certificates.[4] On February 29, 2016, Debtors commenced an adversary proceeding against SEPH challenging the validity, priority, and

---

[2] Judgment One was obtained in a civil action in the Circuit Court for Santa Rosa County, Florida, *SE Property Holdings, LLC v. Bill Pullum Realty, et. al.,* 2012-CA-001079; Judgment Two was obtained in a civil action in the Circuit Court of Santa Rosa County, Florida, *SE Property Holdings, LLC v. Crescent Shores Properties, Inc., et. al.,* 2012-CA-001083. The Judgments were money judgments as well as foreclosure judgments.

[3] POC 42-2. The claimed amount reflects the total amount collected at the foreclosure sales subtracted from the total amount of the Judgments.

[4] Debtors, either individually or together, own various stock certificates in several entities, some of which own properties in Honduras. The stock certificates appear to hold considerable value.

extent of SEPH's liens; and seeking avoidance of any lien or other interest in investment securities of and distributions from business entities.[5] On November 23, 2016, the Court entered an Order referring the adversary proceeding to mediation. (16-3008-JCO Doc. 39). As mediator, the Court appointed retired Bankruptcy Judge Jack Caddell, who graciously mediated the adversary proceeding at no charge to the Pullums or SEPH. Through mediation with Judge Caddell, and over the course of approximately two years, the parties engaged in meaningful settlement negotiations which ultimately resulted in a compromise between the Pullums and SEPH. On February 13, 2018, the Debtors filed their Motion to Approve Compromise under Rule 9019, (Doc. 339), which the Objecting Creditors vehemently opposed.

The compromise proposes a settlement totaling $650,000.00; $500,000.00 of which would be paid by the various entities Debtors own stock certificates in, while the remaining $150,000.00 would be paid from the proceeds of the sale of the Honduras properties.[6] Objecting Creditors request the Court deny the Motion on the basis that the judgment lien certificates ("JLCs") were permanently void and of no effect because they were filed prior to the expiration of the time for rehearing. Additionally, the Objecting Creditors argue that if the Court denies the Motion, the issues in the adversary proceeding could be easily and quickly resolved, and that the settlement is not in the paramount interest of the creditors.

SEPH requests the Court grant the Motion on the basis that the JLCs were final because they each contained the phrase "for which let execution issue," which SEPH argues is sufficient to bypass the requirement that the period for rehearing expire before filing. SEPH also argues that the settlement was based on the informed judgment of Debtors and does not fall below the lowest point in the range of reasonableness. Finally, SEPH argues that the state court deemed the

---

[5] *Pullum v. SE Property Holdings, LLC*, Adv. No.: 16-03008-JCO, Doc. 1.
[6] Doc. 339 at ¶ 18-19.

Judgments final, and it is not the role of the federal court to go behind a state court's decision, but to merely canvass the issues to determine if settlement is appropriate.

This case has a long history within this Court. By ordering this case to mediation with a former bankruptcy judge, this Court was ever hopeful that the adversary proceeding would reach a compromise so that a plan could be proposed and approved by this Court, and the Pullums could move on with their lives. Though the undersigned applies substantial weight to the compromise mediated by retired Bankruptcy Judge Caddell and is aware and appreciative of the substantial effort he put forth to help the parties reach the settlement, the undersigned must nonetheless deny approval of the compromise for the reasons set forth below.

## DISCUSSION

### Standard to Determine Whether Settlement is Appropriate

A compromise or settlement may be approved by the Court under the purview of Fed. R. Bankr. P. 9019(a).[7] To determine the "fairness, reasonableness, and adequacy" of a proposed settlement,[8] the Eleventh Circuit adopted the four-factor test set out in *In re Justice Oaks II, Ltd.*[9] A bankruptcy court must consider:

> (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the manner of collection; (c) the complexity of the litigation involved and the expense, inconvenience, and delay necessary in attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.[10]

When considering whether approval of a settlement agreement is appropriate, the role of the bankruptcy judge "is not to decide the numerous questions of law and fact raised by appellants

---

[7] Fed. R. Bankr. P. 9019(a): "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. . . ."
[8] *In re Chira*, 567 F.3d 1307, 1312-1313 (11th Cir. 2009).
[9] *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir. 1990).
[10] *Id.* at 1549 (citing *Martin v. Kane (In re A&C Properties),* 784 F.2d 1377, 1381 (9th Cir. 1986) (citations omitted)).

4

but rather to canvass the issue and see whether the settlement 'fall[s]' below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  The concept of the "range of reasonableness" has been defined as "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

After canvassing the issues raised by the Objecting Creditors, this Court has determined that the Motion is due to be denied in that three of the four *Justice Oaks* factors weigh against granting the Motion. All parties agree that the second factor – difficulties in collection - is not an issue in this case.  In looking at the Florida statute regarding the filing of JLCs, the Court finds it is not appropriate to approve the settlement.

### **Probability of Success and the Complexity of Litigation**

The first and third of the *Justice Oaks* factors - the probability of success in litigation; along with the complexity of the litigation involved and the expense, inconvenience, and delay necessary in attending it - weigh against approving the settlement. The probability of success and complexity of the underlying adversary proceeding revolve around this Court's interpretation of the Florida statute under which the JLCs were filed.  Unfortunately, there is conflicting case law from across the state interpreting the statute. The statute, Fla. Stat. § 55.202(2)(a), states:

> A judgment lien is acquired by filing a judgment lien certificate in accordance with s. 55.203 with the Department of State after the judgment has become final and if the time to move for rehearing has lapsed, no motion for rehearing is pending, and no stay of the judgment or its enforcement is then in effect. A court may authorize, for cause shown, the filing of a judgment lien certificate before a judgment has become final when the court has authorized the issuance of a writ of execution in the same manner. A judgment lien certificate not filed in compliance with this subsection is permanently void and of no effect.

Objecting Creditors argue that the underlying issue in the adversary proceeding could be resolved by a simple summary judgment motion because the JLCs were filed prior to the expiration of the period for a motion for rehearing to be filed, so the JLCs were "permanently void and of no effect," pursuant to Fla. Stat. § 55.202(2)(a). SEPH, on the other hand, argues that the litigation would be "protracted and costly . . . with such litigation yielding only uncertain and possibly minimal benefit to the Bankruptcy Estate."[11] SEPH further argues that the inclusion of the phrase "for which let execution issue," bypasses the requirements of Fla. Stat. § 55.202(2)(a).

Both parties have offered case law in support of their respective positions, but the case law does not speak to the issue of whether including the phrase "for which let execution issue" constitutes "cause" under the second sentence of Fla. Stat. § 55.202(2)(a). While Florida law is mostly unsettled on whether the inclusion of the phrase "for which let execution issue" renders a judgment final, there is a case out of the United States District Court for the Southern District of Florida that suggests that Fla. Stat. § 55.202(2)(a) is clear on its face in terms of the timing of filing a judgment lien certificate.

In *Paladin Shipping Co., Ltd. v. Star Capital Fund, LLC*, a judgment creditor filed a judgment lien certificate prior to the expiration of the time for rehearing. *Paladin Shipping,* Case No.: 1:10-cv-21612, 2014 WL 12685861 *1, *6 (S.D. Fla. September 8, 2014). The issue before the court was whether the rehearing time had been reset due to an amendment made regarding the post-judgment interest rate, not whether the lien certificate at issue had been prematurely filed. *Id.* After determining that the rehearing time had been reset by the amendment, the court held, without further discussion, that "[t]he Lien Certificate was prematurely filed, did not comply with Florida Statute section 55.202, and [was] therefore 'permanently void and of no effect.'" *Id.* at *6 (citing

---

[11] Doc. 357 at p. 18.

6

Fla. Stat. § 55.202(2)(a)). The court did not interpret the statute, or make a determination on when a judgment lien certificate is prematurely filed if a final judgment contains the phrase "for which let execution issue."

In canvassing the issues presented, the Court keeps in mind basic principles of statutory interpretation. "The starting point for all statutory interpretation is the language of the statute itself." *In re Tennyson*, 611 F.3d 873, 877 (11th Cir. 2010). It is assumed that "Congress used the words in a statute as they are commonly and ordinarily understood," and courts must interpret the "statute to give full effect to each of its provisions." *Id.* A single word or term in a statute is not considered in isolation, "but instead [a court must] look to the entire statutory context." *Id.* A court should only "look beyond the plain language of a statute at extrinsic materials to determine the [legislative] intent if: (1) the statute's language is ambiguous; (2) applying it according to its plain meaning would lead to an absurd result; or (3) there is clear evidence of contrary legislative intent." *Id.* (*citing United States v. DBB, Inc.,* 180 F.3d 1277, 1281 (11th Cir. 1999)). It is well established that when a court finds "the term of a statute unambiguous, judicial inquiry is complete, except in 'rare and exceptional circumstances.'" *Garcia v. U.S.,* 469 U.S. 70, 75 (1984) (citations omitted).

Here, Fla. Stat. § 55.202 states that a judgment lien certificate may only be filed after the expiration of the time for rehearing, unless a court, for cause shown, allows the judgment lien certificate to be filed early.[12] One might contend that in *Paladin Shipping,* the court's lack of discussion on the issue of prematurely filing a judgment lien certificate indicates that Fla. Stat. § 55.202(2)(a) is clear on its face and does not allow the premature filing of a judgment lien certificate without prior authorization from the court. However, given the conflicting case law

---

[12] Fla. Stat. § 55.202(2)(a).

interpreting this statute, combined with the parties' conflicting views on the issue, this Court is reluctant to rely on another court's silence in determining the pivotal issue in this case: are the JLCs void and of no effect because they were filed prematurely?

Nothing in SEPH's Papers or arguments at the Final Hearing shows "rare and exceptional" circumstances that would warrant this Court overlooking the plain language of the statute. SEPH primarily argues that the inclusion of the phrase "for which let execution issue" and the lack of objection to the form of the Judgments in the state court cases render the Judgments final. But SEPH does not address the second requirement of the statute: that the time for rehearing expire. SEPH has not convinced this Court that the simple inclusion of the phrase "for which let execution issue" in the Judgments constituted "cause" as required under Fla. Stat. § 55.202(2)(a), that would allow the immediate filing of the JLCs. Likewise, the Objecting Creditors have not provided authority to support their contention that the inclusion of the phrase "for which let execution issue" is not "cause" enough to allow the JLCs to be filed before the expiration of the time for rehearing.

At the Final Hearing, Attorney John Mead, SEPH's state court counsel, testified that in his view, the JLCs were timely filed because the standard practice of attorneys in his locale is to file judgment lien certificates immediately when the underlying final judgment contains the phrase "for which let execution issue."[13] To the contrary, in her deposition, when asked whether she communicated in any way that SEPH could immediately execute on its money judgments, Andrea Lyons, Debtors' state court counsel, indicated that she did not communicate authority or consent to SEPH to immediately execute the money judgments. She further stated: ". . . had the phrase [let execution issue] ended or had included 'immediately' or 'forthwith' indicating that collection could begin, I would have objected instead of agreeing to Mr. Mead's final judgment."[14] The

---

[13] John Mead Testimony at Final Hearing on December 14, 2018 at 12:33, Case No.: 14-30215-JCO.
[14] Doc. 405-1 at pp. 26-27.

8

conflicting views of these two licensed attorneys, who are intimately familiar with this statute, is further support that Fla. Stat. § 55.202(2)(a) may not be as clear and unambiguous as the parties would lead this Court to believe.

The Court found Mr. Mead's testimony to be honest and straightforward, and he justifiably believed that the JLCs were timely filed due to the custom in his area; however, based on the *Paladin Shipping* case and Ms. Lyons' testimony, and this Court's own statutory interpretation of § 55.202, this Court is not convinced that SEPH's JLCs were timely filed. The issue in the adversary proceeding is validity of the JLCs, so the timing requirement under Fla. Stat. § 55.202(2)(a) is vital. SEPH did not obtain permission from the state court, nor did SEPH wait the statutorily mandated time period before filing the JLCs. Because it appears the JLCs may have been filed prematurely, Debtors may have a reasonable chance of success in the adversary proceeding. Additionally, though this appears to be a matter of first impression within this local district of Florida courts, resolution of it does not appear to be inordinately complex, so the first and third *Justice Oaks* factors weigh in favor of denying the Motion.

**Paramount Interest of the Creditors and Proper Deference to their Reasonable Views**

The fourth *Justice Oaks* factor – the paramount interest of the creditors and proper deference to their reasonable views in the premises – also weighs against approving the settlement. Courts have rejected settlements under the purview of the *Justice Oaks* factors where the majority of creditors have objected to the settlement. *In re Vazquez*, 325 B.R. 30, 36-37 (Bankr. S.D. Fla. 2005). In *Vazquez,* for example, the court stated "[i]t is not the creditors' task to determine the fairness of a proposed settlement; it is the court's obligation to make that determination while making certain not to ignore their legitimate views or concerns." *Id.* at 37 (citing *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914, 918 (5th Cir.

1995)). After canvassing the issues, the court ultimately approved the settlement, but mainly to avoid prolonged and costly litigation. *Id.* at 41.

Here, a decision on the merits in the adversary proceeding would determine whether SEPH has a secured or unsecured claim in Debtors' bankruptcy case. Excluding the claim of SEPH, Debtors' total unsecured debt in this case exceeds $31,000,000.00.[15] Objecting Creditors alone comprise over $25,000,000.00 of the unsecured debt.[16] SEPH's claimed amount, on the other hand, comprises only $825,210.55 plus interest, fees, and other expenses.[17] A finding that SEPH has an unsecured claim would allow a greater recovery for all unsecured creditors, and not a windfall for SEPH based on JLCs which may be invalid. With Objecting Creditors representing such an overwhelming amount of the unsecured debt, it would be improper for the Court to disregard their objections, so this factor weighs against approval of the settlement as well.

### **"Collateral Attack" on State Court Judgments**

SEPH argues that a ruling in the adversary proceeding in favor of Debtors would collaterally attack the state court decision, contrary to the Full Faith and Credit Clause of the U.S. Constitution. This argument is misleading. The crux of the adversary proceeding is not whether the state court erred in issuing the Judgments, but whether SEPH's actions – filing the JLCs before the time for rehearing expired – rendered them permanently void and of no effect. If the Court made a decision on the merits of the adversary proceeding, the decision would be related to the perfection of the Judgments, and not whether the Judgments should be vacated or altered.

### **CONCLUSION**

---

[15] *See* POC 3-1, 4-1, 5-1, 6-1, 26-1, 27-1, 29-1, 31-1, 32-1, 35-4, 36-2, 39-1, 40-2, 41-1, 43-2, 45-2, and 46-1.
[16] POC 3-1 and 5-1.
[17] POC 42-2.

As previously emphasized, this Court's role with regard to the Motion is not to determine the merits of the underlying issues in the adversary proceeding, but rather to simply canvass the issues and determine whether the Motion should be granted based on the *Justice Oaks* factors. Here, three of the factors, as addressed above, weigh against approving the settlement. While Florida state law is unsettled on the finality of judgments that include the phrase "for which let execution issue," there is federal case law to support the assertion that Fla. Stat. § 55.202(2)(a) is unambiguous on its face regarding the timing of filing a judgment lien certificate. Moreover, a plain reading of the statute causes this Court to conclude that a reasonable argument may exist that the JLCs were not timely filed by SEPH; such a conclusion could render them permanently void and of no effect. Additionally, with objections from the two largest unsecured creditors, the Court finds that the paramount interests of the remaining creditors in the case are not met by the settlement as proposed, so the Motion should be denied.

Lastly, the parties should note that this ruling is a ruling under Bankruptcy Rule 9019 only. The Court has canvassed the issues presented, but has in no way ruled on the underlying issues interpreting Florida state law. In any future litigation of the underlying issues, the parties are prohibited from relying on this ruling as support for their positions.

For the reasons stated, it is

ORDERED: Debtors' *Motion for Approval of Mediation Settlement* (Doc. 339) is DENIED.

Dated: March 14, 2019

JERRY C. OLDSHUE, JR.
U.S. BANKRUPTCY JUDGE

Attorney for Trustmark National Bank and Beach Community Bank is directed to serve a copy of this Order on interested parties and file a certificate of service within 3 business days of entry of the Order.